IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CANDY FLANNERY,                    )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )        NO. 3:18-cv-00584
                                   )        JUDGE RICHARDSON
TUNE IMPORTS, INC.,                )
                                   )
        Defendant.                 )

## MEMORANDUM OPINION

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 14) ("Motion"). Plaintiff has filed a response in opposition (Doc. No. 32), and Defendant has filed a reply (Doc. No. 41).

Plaintiff Flannery is a former employee of Defendant Tune Imports who has sued Defendant under three federal employment discrimination statutes: (1) 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); (2) 42 U.S.C. § 1981 ("Section 1981"); and (3) 42 U.S.C. 12101, *et seq.* ("Americans with Disabilities Act" or "ADA"). Plaintiff alleges discrimination by Defendant based upon race, sex, and disability, plus retaliation for opposing that discrimination.

Defendant's Motion for Summary Judgment addresses a threshold issue: whether Defendant qualifies as an "employer" for purposes of liability under Title VII and the ADA; that is, whether Defendant had enough employees to be subject to Title VII and the ADA. Defendant's Motion does not seek summary judgment on Plaintiff's Section 1981 claim, so the Motion is really one for *partial* summary judgment. (*See* Doc. No. 24). Defendant asserts that it is not subject to either Title VII or the ADA with regard to Plaintiff because it did not have enough employees in either year relevant to Plaintiff's employment (2016 and 2017).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 628.

A party asserting that a fact cannot be or genuinely is disputed—i.e., a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). On a motion for summary judgment, a party

2

may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018).

The court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## <u>ANALYSIS</u>

Employers are subject to Title VII and the ADA only if they have at least 15 employees on each working day for 20 or more calendar weeks in either the year in which the alleged discrimination occurred or the preceding year. 42 U.S.C. § 2000e(b); 42 U.S.C.A. § 12111(5)(A).[1]

---

[1] The Supreme Court has referred to this requirement as an "employee-numerosity requirement." *Wright v. Memphis Police Ass'n*, No. 2:14-cv-02913-STA-dkv, 2016 WL 4006091, at *13 (W.D. Tenn. July 25, 2016) (citing *Walters v. Metro. Educ. Enters, Inc.*, 519 U.S. 202, 206 (1997)). Herein, the Court will speak in terms of whether *Defendant* meets the "numerosity" requirement so as to be potentially liable to Plaintiff, although the Court is well aware that actually it is *Plaintiff's* burden to "meet" this requirement and that Defendant does not wish to "meet" it and believes it cannot be met here.

3

This numerosity threshold is an element of a plaintiff's case rather than a jurisdictional requirement. *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 504 (2006). The numerosity requirement for Title VII and ADA coverage is generally a factual question to be determined on the merits. *Arbaugh,* 546 U.S. at 512. If satisfaction of an essential element of a claim is at issue, the jury is the proper trier of contested facts. *Id*. at 501-502 (citing *Reeves v. Sanderson Plumbing  Products, Inc.,* 530 U.S. 133, 150–151 (2000)).

However, whether an individual is an "employee" for purposes of Title VII  and the ADA is a mixed question of fact and law. *Wheatley v. W. Cent. Michigan Employment & Training Consortium, Inc.*, 341 F. Supp. 3d 753, 764 (W.D. Mich. 2018) ("In making the determination between employee and independent contractor status, '[a]nalysis of the common law factors is a mixed question of law and fact, a determination that the trial judge normally makes as a matter of law.'") (quoting *Lilley v. BTM Corp.*, 958 F.2d 746, 750, n. 1 (6th Cir. 1992)); *Loan Du v. Elite Technology, Inc*., Civil Action No. 10-2331-DJW, 2012 WL 426935, at *3 (D. Kan. Feb. 10, 2012) ("[D]etermination of employment status is a mixed question of law and fact."). It is a question— antecedent to the question of whether there are enough employees, for a long enough period of time, for the defendant to meet the numerosity requirement—that, "[i]n the absence of a conflict of material fact," can be decided by the court as a matter of law. *Bowers v. Ophthalmology Group, LLP*, 648 F. App'x 573, 578 (6th Cir. 2016) (quoting *Simpson v. Ernst & Young*, 100 F.3d 436, 439 (6th Cir. 1996));  *Loan Du,* 2012 WL 426935, at *3 ("Unless there is a genuine dispute as to a material fact or conflicting inferences that can be drawn from the undisputed evidence, the Court may determine employment status as a matter of law.").

The Supreme Court has stated that for purposes of satisfying this numerosity requirement, "all of the individuals with whom an employer has an employment relationship are 'employees'

of that employer." *Wright v. Memphis Police Ass'n*, No. 2:14-cv-02913-STA-dkv, 2016 WL 4006091, at * 13 (W.D. Tenn. July 25, 2016) (citing *Walters v. Metro. Educ. Enters, Inc.*, 519 U.S. 202, 206 (1997)). While this proposition is not particularly helpful,[2] the law elsewhere provides guidance (discussed below), for determining who is and is not an employee. Thus, the essential question on this Motion is whether there is a genuine issue of material fact as to whether Defendant had a sufficient number of "employees" (as that term is properly construed under applicable law) over a sufficient number of weeks during the relevant years.

Defendant claims that in 2016, it had fewer than 15 employees for every calendar week and in 2017, it had 15 or more employees for only eight calendar weeks.[3] Defendant supports this statement with an Affidavit from John Tune, Defendant's President and General Manager, and weekly payroll employee accounts records attached thereto. (Doc. No. 16). The Court notes that for multiple reasons, a factual showing of how many people *were paid* or how many people worked in a given week is not the same as a showing of how many "employees" a business. For "employee" is a distinct (from, *e.g.*, independent contractor or shareholder/director) and consequential category of person under Title VII—a category given a separate (though not very

---

[2] It could be said that this definitional statement is "completely circular and explains nothing," like Title VII's definition of employee ("an individual employed by an employer"). *See Bowers v. Ophthalmology Group, LLP*, 648 F. App'x 573, 578 (2016) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992) (disparaging ERISA's definition of an employee, "an individual employed by an employer," 29 U.S.C. § 1002(6))). To the extent that a definition is circular—that is to say, tautological—it tends to be unhelpful. *See, e.g., Arreola-Castillo v. United States*, 889 F.3d 378, 386 (7th Cir. 2018) (disregarding various dictionary definitions of the word "validity" as "unhelpful tautologies"); *Phillips 66 Pipeline LLC v. Rogers Cartage Co.*, No. 11-cv-497-DRH-DGW, 2013 WL 4083623, at *5 (S.D. Ill. Aug. 13, 2013) (noting that CERCLA defines "owner or operator" in unhelpful fashion, *i.e.*, only by tautology).

[3] Defendant claims that for these eight weeks it had exactly 15 employees, and not more.

specific or useful) statutory definition,[4] described by case law, and one that turns on much more than who was "paid" (for something) or who "worked" at something. Second, as noted above, whether someone is an "employee" is a mixed question of law and fact. This means that applicable facts as the Court finds them (such as who was paid by the alleged employer and who worked at the alleged employer) do not by themselves answer the question, but rather must be analyzed under the applicable legal standard.

Because Defendant has challenged this element of Plaintiff's claim, asking the Court to find at this stage that as a matter of law that it did not meet the numerosity requirement. Defendant has presented evidence suggesting that it did not have as many as fifteen employees for a sufficient period time during the years in question; it thus has its initial burden as the summary judgment movant to show the absence of a genuine issue of material fact as to the numerosity requirement. Thus, the burden shifts to Plaintiff to "set forth specific facts showing that there is a genuine issue for trial" (*Pittman*, 901 F.3d at 628) as to whether Defendant had fifteen or more employees for each working day in each of twenty or more calendar weeks in 2016 or 2017. *See Doe v. Grand Co.*, Case No. 18-cv-13123, 2020 WL 806031, at *10 (E.D. Mich. Feb. 18, 2020). And the Court must view the facts in the light most favorable to Plaintiff. *Id.* at * 11.

---

[4] The term "employee" is defined in both Title VII and the ADA as "an individual employed by an employer." 42 U.S.C. §2000e(f); 42 U.S.C. §§ 12111(4). But the statute provides no definition of "employed," and its definition of "employer" is primarily geared to the definition of "employee." As this Court said a few years ago about the ADA, "[t]he Act somewhat circuitously provides that an employee is 'an individual employed by an employer[.]'" *Bynum v. Mack Mech., Inc.*, No. 2:16-0023, 2016 WL 6138607, at *2 (M.D. Tenn. Oct. 21, 2016). Like tautological definitions generally, these tautological definitions are largely unhelpful in ascertaining what constitutes an "employee" or who is or is not an "employee." Moreover, the "circumstances constituting that [employee] relationship are not defined specifically by statute." *Id.* (quoting *Janette v. Am. Fid. Grp., Ltd.*, 298 F. App'x 467, 471 (6th Cir. 2008)).

6

Attempting to meet her burden, Plaintiff denies Defendant's assertions, (Doc. No. 33 at 1), and contends that Defendant's "payroll registers" and quarterly state and federal unemployment tax records show that Defendant had more than 15 employees during the relevant times. (Doc. No. 32 at 3). She has filed documents related to Defendant's quarterly state and federal unemployment tax reports for each quarter in 2016 and 2017, with the documents for each such quarterly filed separately in a batch containing anywhere from 17 to 26 pages each. (Doc. Nos. 36-5 through 36-12). She mentions these very briefly in passing when claiming, with no pinpoint cite(s) at all, that Defendant had represented therein that it had 15 or more employees in 20 or more weeks in 2016 and 2017. (Doc. No. 32 at 3).

But these documents are not helpful to the Court when Plaintiff provides no pinpoint cite(s) or explanation whatsoever. (Doc. No. 32 at 3). Even less helpful to the Court is Plaintiff's reference to Defendant's payroll registers for 2016 and 2017, each of which is more than 245 pages long, with absolutely no pinpoint cites to pages collectively showing the numbers of Defendant's employees for the various weeks at issue (let alone showing that Defendant had at least 15 or more employees during at least 20 weeks during 2016 and/or 2017), and no explanation concerning what the various pages of the documents represent or reflect. (Doc. Nos. 36-1, 36-2, 36-3, and 36-4). Notably, in its reply brief, Defendant disputed that Plaintiff had satisfied the employee-numerosity requirement, asserting, among other things, that its payroll records actually showed the employee-numerosity requirement had *not* been satisfied. And yet Plaintiff never sought leave to file a sur-reply—thus forgoing any opportunity to clarify, via a coherent explanation and pinpoint citations as appropriate, that the documents she had filed in fact *did* suggest that the employee-numerosity requirement had been satisfied.

7

It is well-settled that the non-moving party must cite *specific* portions of the record in opposition to a motion for summary judgment, and the court is not required to search the record for some piece of evidence that might stave off summary judgment. *Mullenix v. Eastman Chemical Co.*, 237 F. Supp. 3d 695, 710 (E.D. Tenn. 2017). A district court is not required to search the record to determine whether genuine issues of material fact exist when the non-moving party has failed to point them out. *Adams v. Lockheed Martin Energy Sys. Inc.*, 199 F. App'x 405, 409 (6th Cir. 2006); *Wardle v. Lexington-Fayette Urban Cty. Gov't*, 45 F. App'x 505, 509 (6th Cir. 2002).

In *JDC Mgmt., LLC v. Reich*, 644 F. Supp. 2d 905, 930 (W.D. Mich. 2009), the plaintiff failed to specify where in a nine-page, single-spaced document it alleged that a defendant violated the law in some way, and the court stated: "[I]t is not the court's job to scour the record for the requisite specific evidence to create genuine issues of material fact on [plaintiff's] behalf." *Id.*; *see also Hubbart v. Brown*, Nos. 95-1983, 95-1988 and 96-1078, 1997 WL 242084, at *6 (6th Cir. May 8, 1997), *cited in JDC Mgmt.* ("It is not the court's job to sort through hundreds of pages of unmarked exhibits in an attempt to find something that might possibly be interpreted as supporting defendant's arguments." "There is no reason why . . . defendant's attorney should be permitted to shift his duty to represent his clients to the Court by simply throwing hundreds of documents at the Court and hoping the Court finds something it will interpret as supporting his arguments"). The Court declines to sift through the record on its own to establish what Plaintiff did not establish in her response to the motion or any potential reply brief. The Court wants to see and hear what Plaintiff has to say and show, but that is just the point: *Plaintiff* must say and show it to the Court.

Plaintiff also claims that certain additional persons should be included as "employees" of Defendant for the times in question. First, Plaintiff asserts that John Tune's "significant other," Ann Alexander, who was characterized by Defendant as an independent contractor, should be

8

counted as an employee because Defendant provided her health insurance through its employee health insurance plan. (Doc. No. 32 at 3).

John Tune testified that beginning in 2018,[5] Defendant paid for Alexander's health insurance "in lieu of me taking pay." (Doc. No. 34-1 at 11-12)[6] ("Knowing that she would go on Medicare in less than a year, I paid her insurance through the company to offset or I offset it by pay I don't take."). In her Declaration, Alexander stated that she was not an employee of Tune Imports. She asserted that she performed three "dealer trades"[7] for Defendant as an independent contractor in 2017 and, in connection therewith, received an IRS Form 1099 for $2,000 in 2017. (Doc. Nos. 45 and 45-1). John Tune further testified that Alexander had no IRS Form 1099 from Defendant in 2016 or 2018. (Doc. No. 34-1 at 9).

Although Plaintiff argues that Alexander should be treated as an employee instead of an independent contractor because she receives health insurance, Plaintiff has not presented evidence that Alexander received health insurance in the two years in question, 2016-2017. Tune testified that he paid her health insurance beginning in 2018, and Plaintiff has not shown otherwise. Plaintiff has not asserted any other reason that Alexander should have been classified as an employee. (Doc. No. 32 at 3). Moreover, Plaintiff has cited no authority for the proposition that receipt of health insurance alone makes one an "employee." Indeed, Plaintiff has cited nothing to show how the

---

[5] He stated that he added Alexander to the company health insurance about 15 months prior to the day of his deposition, which was October 29, 2019. (Doc. No. 34-1 at 8).

[6] Page numbers here refer to the page numbers assigned by the Clerk's office for this document, and not to the deposition transcript page number assigned by the court reporter.

[7] A "dealer trade" involves driving a vehicle from one car dealership to another, picking up a different vehicle at the second dealership, and driving the second vehicle back to the first dealership, essentially facilitating a vehicle trade. (Doc. No. 45).

9

Court is supposed to determine whether someone is an independent contractor as opposed to an employee.[8] Plaintiff thus fails to show that the facts on which she relies here raise, under applicable law defining "employee" for purposes of the employee-numerosity requirement, a genuine issue of material fact as to whether Alexander was an "employee" of Defendant in 2016 and 2017.

Second, Plaintiff contends that John Tune should have been counted as an employee. John Tune testified that he is an employee of Defendant. (Doc. No. 34-1 at 21-22). He testified that in 2016-17, he was President and General Manager of Defendant and did many other things for the business. (*Id*. at 4-5). He testified that he is the only one of the four shareholders of Tune Imports who is also an employee of the company (*id*. at 21) and that he gets an IRS W-2 Form for his full 52-week employment with Defendant. (*Id*. at 22). He agreed that he devotes 100% of his time to the business as reflected on the tax forms found at Doc. Nos. 34-3 and 34-4. (*Id.* at 26). Defendant does not seem to deny that John Tune was an employee. Therefore, Plaintiff's point is well-taken, and the Court finds that John Tune should be counted as an employee of Defendant for purposes of determining whether Plaintiff has made a sufficient showing that she can satisfy the employee-numerosity requirement to avoid summary judgment. But even with John Tune counted, Defendant had at most 15 (and perhaps 14) employees for only 11 weeks during 2016 and 15 weeks in 2017.[9]

---

[8] The Sixth Circuit has held that federal employment discrimination statutes protect employees but not independent contractors. *Walton v. Interstate Warehousing, Inc.,* No. 3:17-cv-1324, 2020 WL 1640440, at *4 (M.D. Tenn. Apr. 2, 2020).

[9] The Court is unsure as to whether the inclusion of John Tune brings the number to 14 or instead to 15. This is due to its uncertainty as to whether the undisputed base number of employees, as reflected in the payroll records attached to the Affidavit of John Tune (Doc. No. 16), to which he (but not, as discussed below, Ann Alexander, Carolyn Tune, Julian Tune, or David Tune) is added already included him.

10

Third, Plaintiff claims that Defendant also "employed" Carolyn, David, and Julian Tune in 2016-2017 (Doc. No. 32 at 3-4). Plaintiff acknowledges that Defendant's exclusion of Carolyn, David and Julian Tune from its numbers of employees is based on Defendant's position that these persons were "mere shareholders." (*Id*. at 4). To counter Defendant's position, she: (a) points out that each of these persons appears on defendant's payroll registers and had payroll taxes deducted; and (b) Defendant took a different position with the Internal Revenue Service in its 2016 and 2017 federal tax returns. (Doc. No. 32 at 4).

The first of these points is not probative because, as noted above, Plaintiff has not cited to any specific portion(s) of the payroll registers to support this assertion. Moreover, John Tune stated that Carolyn, Julian and David Tune got bonuses at the end of the years 2016-2017, bonuses for which they were issued IRS Form W-2s and from which tax withholdings were taken. (*Id*. at 22). He explained that the Chairman of the Board (Carolyn Tune) told him to pay bonuses to the stockholders—$4,000—subject to withholding, and "any time you withhold, you get a W-2." (*Id*. at 18). John Tune did not say that "payroll taxes" were deducted. Plaintiff has not shown how being on a payroll register for receiving a bonus as a shareholder makes one an "employee" or how being issued a W-2 for receiving a bonus as a shareholder makes one an "employee" for Title VII or ADA purposes. As explained below, the mere fact that one is on the payroll (which is not even evidenced here) does not necessarily mean that he or she is an "employee" under federal employment law. *De Jesus v. LTT Card Servs., Inc.,* 474 F.3d 16, 22 (1st Cir. 2007). "It is 'the existence of an employment relationship, not appearance on the payroll,' [that] is critical, because an individual may appear on the payroll but nevertheless not be 'an "employee" under traditional principles of agency law.'" *Id.* (quoting *Walters v. Metro. Educ. Enters.*, 519 U.S. 211, 117 S. Ct.

660 (1997)). This is important because, as discussed below, common-law principals of agency law guide the Court's determination of employee status here.

As to the second point, Plaintiff asserts that Defendant represented to the federal government, on its tax forms for 2016 and 2017, that Carolyn, David, John, and Julian Tune each devoted 100% of their time to Defendant's business. He has filed tax forms reflecting this representation. *See* Doc. Nos. 34-3 and 34-4 (IRS Forms 1125-E for 2016 and 2017). John Tune testified that these three shareholders did *not* devote 100 percent of their time to the business of Tune Imports and the tax forms that state otherwise are inaccurate. (Doc. No. 34-1 at 26). He stated that Carolyn Tune "does not work there" and his two brothers "have never worked there." (*Id.* at 12-13, 16-17). Moreover, he testified that Carolyn and Julian "don't devote any time to the business . . . Zero." (*Id.* at 22-23).

This inconsistency is not lost upon the Court, but Plaintiff fails to establish any particular relevance to it. She claims that Defendant should be estopped to contend now that it had fewer than 15 employees during the relevant time periods because of these representations to the federal government, but she cites no legal authority on the issue of estoppel or on the issue of how the representations on the tax forms relate to the definition of "employee" under Title VII and the ADA. The fact that there is not necessarily any relationship is apparent from the title of the form itself, "Compensation of Officers." Defendant's representation here—whether or not false and even granting its inconsistency with John Tune's deposition testimony—is only that these three spent 100 percent of their time "devoted to [the] business." It is *not* a representation that any of them spent 100 percent of their time at the business *as employees* rather than as a hands-on (part) owner—a scenario that is not farfetched inasmuch as owners can indeed spend all of their time at a business not because they are employees, but precisely because they are *not* employees but

12

instead owners who (unlike non-owner employees) have everything personally at stake in the business.

Plaintiff asserts that Defendant "should not be permitted to represent to the federal government that it has more than 15 employees when doing so favors it for federal income tax purposes, while at the same time represent that it has fewer than 15 employees in an effort to evade the mandates of Title VII and the ADA that it not engage in unlawful employment practices." (Doc. No. 32 at 5). But she does not say why this conclusory statement is true.[10] She fails to acknowledge that federal tax law is very different from federal employment law. And most circuits to address the issue have found, persuasively, that treatment of persons for tax persons is of little value in analyzing someone's status under federal employment or labor law. *See Seattle Opera v. NLRB,* 292 F.3d 757, 764 n.8 (D.C. Cir. 2002) ("[T]he tax treatment of the [workers'] payments is of little analytical significance" on the question of "employee" status); *Eisenberg v. Advance Relocation & Storage, Inc.,* 237 F.3d 111, 116 (2d Cir. 2000) ("Were . . . tax treatment factors accorded extra weight, . . . a firm and its workers could all but agree for themselves, simply by adjusting the structure of workers' compensation packages, whether the workers will be regarded as . . . employees."); *J. Huizinga Cartage Co. v. NLRB,* 941 F.2d 616, 620 (7th Cir.1991). *But see Crew One Prods., Inc. v. N.L.R.B.,* 811 F.3d 1305, 1312 (11th Cir. 2016) (noting that the Eleventh Circuit affords strong weight to tax treatment but acknowledging that other circuits disagree).

---

[10] The Court does not begrudge Plaintiff this argument and understands its surface appeal. After all, it is easy to see the unfairness in someone getting to have their proverbial cake and eat it, too. The problem is that Plaintiff does not explain why Defendant's alleged attempt to do so here legally justifies estopping Defendant from making the argument it seeks to make. Still less does she explain why Defendant is in fact culpable for attempting to do so here, given that the representations regarding the three Tunes on the tax form are not, for the reasons discussed herein, actually inconsistent with Defendant's assertion in this litigation that none of them was an employee for purposes of Title VII or the ADA.

13

For example, Plaintiff has provided no explanation whatsoever as to whether "employee" is interpreted under the Internal Revenue Code, particularly the Federal Insurance Contributions Act ("FICA") and the Federal Unemployment Tax Act ("FUTA"), in the same way as it is defined and interpreted under Title VII and the ADA. Still less does Plaintiff explain how a defendant's *interpretation* of such federal tax laws, as expressed on the tax forms filed by a defendant, is probative of who is or is not an "employee" for Title VII and ADA purposes; she certainly has not shown how information on a corporate tax return explaining shareholder compensation for purposes of corporate deductions (which is the purpose of Form 1125-E) is relevant to a determination under Title VII and the ADA.

John Tune testified that Carolyn, Julian, and David Tune were stockholders of Defendant but were not employees. (Doc. No. 34-1 at 21 and 19). The Court realizes that the issue of who is or is not an employee is not one of sheer fact, and that Tune's declaring someone a non-employee does not make it so and is not necessarily accurate under the law. His intention about whether they were employees is relevant under the EEOC test discussed below, however, and so this testimony tends to support Defendant's legal position as to the status of these persons.

In addition, Defendant submitted Declarations from each of Carolyn, David, and Julian Tune wherein he or she averred that he or she: shares in the profits and losses of Defendant through his or her ownership interests; does not exercise his or her ability (as shareholders in the company) to influence the corporation, because John Tune (Carolyn's son and Julian's and David's brother) manages the business; has no written contracts or agreements with Defendant. (Doc. Nos. 42, 43, and 44); and is not obligated to report to anyone higher in the company.[11] John Tune testified that

---

[11] Schedule K-1 tax documents filed in connection with these three shareholders' Declarations indicate that Carolyn Tune owned 53.16% of the stock of Tune Imports in 2016 and 52.16% of the

14

he gets a W-2 for his full 52-week employment, and "the other three stockholders get a W-2 for their year-end bonus." (Doc. No. 34-1 at 22). Plaintiff has not shown that any W-2 received by Carolyn, David, or Julian Tune was for anything other than a year-end bonus.[12] And in fact, the instructions for Form W-2 for 2016 and 2017 *specifically contemplate* issuance of W-2 to persons who are *not* employees under the common-law principles that, as explained below, control in the present context.[13]

In short, the facts pointed to by Plaintiff are *consistent* with these three Tune family members being "employees" under the applicable test, but they are not particularly probative on this question under the applicable test. This becomes clear once one actually examines the applicable test, something Plaintiff does not do. As noted above, the statutory definitions are not helpful to determining who is an is not an employee. In *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440 (2003), the Supreme Court noted this reality and then discussed how to determine employee status in the absence of a helpful statutory definition:

---

stock in 2017; David Tune owned 3.8% of Tune Imports' stock in both 2016 and 2017; and Julian Tune owned 3.8% of the Tune Import stock in 2016 and 4.8% of the stock in 2017. (Doc. Nos. 42-1, 43-1, and 44-1).

[12] The K-1 documents filed with each Declaration reflect money received by Carolyn, David, and Julian Tune as "Shareholder's Share of Income, Deductions, Credits, Etc." As noted, these three shareholders stated that they shared in the profits and losses of Defendant through their ownership interests. (Doc. Nos. 42, 43 and 44).

[13] The instructions for Box 13 of the W-2, found on page 20 for each year, provide as follows: "Check this box for statutory employees whose earnings are subject to social security and Medicare taxes but not subject to federal income tax withholding. Do not check this box for common-law employees. There are workers who are independent contractors under the common-law rules but are treated by statute as employees. They are called statutory employees." *See* https://www.irs.gov/Pub/Irs-prior/Iw2w3--2016.pdf (last accessed May 14, 2020); https://www.irs.gov/Pub/Irs-prior/Iw2w3--2017.pdf (last accessed May 14, 2020).

15

"We have often been asked to construe the meaning of 'employee' where the statute containing the term does not helpfully define it." *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 322, 112 S. Ct. 1344, 117 L.Ed.2d 581 (1992). The definition of the term in the ADA simply states that an "employee" is "an individual employed by an employer." 42 U.S.C. § 12111(4). That surely qualifies as a mere "nominal definition" that is "completely circular and explains nothing." *Darden,* 503 U.S., at 323, 112 S. Ct. 1344. As we explained in *Darden,* our cases construing similar language give us guidance on how best to fill the gap in the statutory text.

In *Darden* we were faced with the question whether an insurance salesman was an independent contractor or an "employee" covered by the Employee Retirement Income Security Act of 1974 (ERISA). Because ERISA's definition of "employee" was "completely circular," we followed the same general approach that we had previously used in deciding whether a sculptor was an "employee" within the meaning of the Copyright Act of 1976, and we adopted a common-law test for determining who qualifies as an "employee" under ERISA. . . . [W]e explained that "when Congress has used the term "employee" without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine."

*Clackamus*, 538 U.S. at 544-45 (citations and internal quotation marks omitted). In short, whether someone has "employee" status under these employment laws turns on common-law notions; "the common law's definition of the master-servant relationship does provide helpful guidance." *Id.* at 448. And "[a]t common law the relevant factors defining the master-servant relationship focus on the master's control over the servant." Thus, "the common-law element of control is the principal guidepost that should be followed . . .." *Id.*

The Court then noted approvingly that this was the position taken by the Equal Employment Opportunity Commission ("EEOC") in its Compliance Manual. As the Court noted, the EEOC's Compliance Manual "discusses both the broad question of who is an "employee" and the narrower question of when partners, officers, members of boards of directors, and major shareholders qualify as employees." *Id.* "With respect to the broad question, the guidelines list 16 factors—taken from *Darden*—that may be relevant to 'whether the employer controls the means and manner of the worker's work performance.'" EEOC Compliance Manual § 605:0008, and n.

16

71. The guidelines list six factors to be considered in answering the narrower question, which they frame as "whether the individual acts independently and participates in managing the organization, or whether the individual is subject to the organization's control." *Id.* at 449 (citation omitted). The Court embraced both the more general and the more narrow multi-factor tests because it was "persuaded by the EEOC's focus on the common-law touchstone of control." *Id.*

The Court then turned to the narrower test because, as in the present case,[14] the issue was whether relevant directors, and/or major shareholders of the defendant qualified as "employees." The Court cited the following six factors, drawn from the EEOC's Compliance Manual, as relevant to the specific inquiry of whether a shareholder-director is an employee:[15]

> (1) Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work;
>
> (2) Whether and, if so, to what extent the organization supervises the individual's work;
>
> (3) Whether the individual reports to someone higher in the organization;
>
> (4) Whether and, if so, to what extent the individual is able to influence the organization;[16]

---

[14] In the present case the issue is whether three major shareholders (Carolyn, David and Julian Tune) are *merely shareholders* and not "employees"; the issue is not, unlike in many cases, whether they are *independent contractors* and not employees.

[15] The EEOC's manual applies across the board to federal antidiscrimination statutes, including Title VII and the ADA. *Clackamas*, 538 U.S. at 449, n.7; *De Jesus*, 474 F.3d at 24.

[16] One may justifiably wonder initially which way this factor is supposed to cut. After all, influence over an organization can be wielded both by a person whom society would undoubtedly recognize as an "employee" and by a person who would undoubtedly be recognized by society only as a director and not as an "employee." An employee, especially one who is omnipresent at the employer's place or within the employer's affairs, can be the more influential of the two. But it is clear, in context, that the intent is that to the extent someone has "influence over the organization," he or she is less likely to be in the "employee" bucket. *See, e.g.*, *Baskett v. Autonomous Research LLP*, No. 17-cv-9237 (VSB), 2018 WL 4757962, at *6 (S.D.N.Y. Sept. 28, 2018) (discussing a

17

(5) Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts; and

(6) Whether the individual shares in the profits, losses, and liabilities of the organization.

*Id*. at 449-50 (quoting 2 Equal Employment Opportunity Commission, Compliance Manual § 605:0009 (2000)); *see also Bowers*, 648 F. App'x at 579 (analyzing issue under the *Clackamas* test).

With the understanding that a shareholder-director alternatively can fill the role of an employer (or "proprietor") rather than employee, the Court explained: "[A]n employer is the person, or group of persons, who owns and manages the enterprise. The employer can hire and fire employees, can assign tasks to employees and supervise their performance, and can decide how the profits and losses of the business are to be distributed." *Clackamas*, 538 U.S. at 450. The six factors are designed to address whether the individual acts independently and participates in managing the organization, or whether instead the individual is subject to the organization's control. *De Jesus*, 474 F.3d at 22-23 (quoting *Clackamas*, 538 U.S. at 450). "If the individual is subject to the organization's control, he is an employee." *Id*. at 23.

In *Clackamas*, the Court made clear that the six-factor list is not exhaustive. "Instead, the answer to whether a shareholder-director is an employee depends on "'"'all of the incidents of the relationship . . . with no one factor being decisive.'"'" *Clackamas*, 538 U.S. at 451 (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992) (quoting *NLRB v. United Ins. Co.*

---

party's argument that under *Clackamas* an individual is an "employer," rather than an "employee" of a firm, because she "exerts substantial influence over the [f]irm").

*of America,* 390 U.S. 254, 258 (1968))), cited in *Boyd v. Med. Disposal, Inc.*, No. 3:05-0023, 2006 WL 8457550, at *6 (M.D. Tenn. July 27, 2006).

As reflected by the above recounting of the evidence and applicable legal principles, Defendant has met its initial burden of showing evidence suggesting that these three persons were not "employees" for purposes of the employee-numerosity requirement. The evidence may not be entirely unambiguous or conclusive, but it doesn't have to be in order to shift the burden of production to Plaintiff.

Plaintiff fails to discharge her burden with respect to these three employees. Doing so would require her to point out evidence suggesting that a jury could find by a preponderance that these persons are "employees" under the applicable law. But Plaintiff has not done so. She has not cited any legal authority for guidance on the issue of whether the Court should consider these shareholders to be employees of Defendant for purposes of Title VII and the ADA. Neither has she pointed out facts related to the six factors listed above or offered facts to dispute the deposition testimony of John Tune, or the declarations of Carolyn, David and Julian Tune, pointing in Defendant's favor as to these factors.

As indicated above, Carolyn, David, and Julian Tune each declared that he or she shares in the profits and losses of Defendant through his or her ownership interests, is not obligated to report to anyone higher in the company, has the ability to influence the corporation,[17] and has no written contracts or agreements with Defendant (and thus none suggesting that the parties intended that he

---

[17] Each also explained that he or she did not exercise that ability, because the business is managed by John Tune. In other words, they have the ability to influence the business—which is consistent with being an owner—and the fact that they do not influence the business is the result of their leaving it to John Tune to run the business, rather than the result of any lack of ability to influence that tends to indicate "employee" status, all other things being equal.

19

or she be an employee). (Doc. Nos. 42-44). Of course, there is always some possibility that the jury could disbelieve this vital testimony were it presented at trial. But mere speculation that this could occur is not enough to create a genuine issue of material fact as to whether these three were employees, given that their version of events: (a) is supported by other evidence in the case (especially John Tune's testimony); (b) makes reasonable sense on its face, inasmuch as experience and common sense suggests that family members owning part of a family business may not be subject to the kind of control that employees of the family business would be; and (c) has not been shown by Plaintiff to be subject to any particular credibility challenge

There is no evidence before the Court that Defendant can "hire or fire" Carolyn, David, and/or Julian Tune or that Defendant sets the rules and regulations of their "work." Indeed, there is no evidence that these family members actually do work for the business (except for the now-disclaimed representation on the 1125-E tax forms that they devote 100% of their time to the business) or what kind of "work" they do. There is no evidence presented here that Defendant supervises the work (if any) of Carolyn, David and/or Julian Tune or that Carolyn, David and/or Julian Tune "report to someone higher" in Defendant's organization. Plaintiff has not shown, to a degree sufficient to raise a genuine issue, that Carolyn, David and Julian Tune are more than shareholders of Defendant.

The Court finds that Defendant carried its burden to demonstrate that, for purposes of Title VII and the ADA, it had fewer than 15 employees for 20 or more weeks in 2016 and 2017, and Plaintiff has failed to carry her resulting burden to show that there are genuine issues of material fact as to that issue.

The Court realizes that once the summary judgment burden has shifted to Plaintiff, as it did in this case, she merely has to raise a genuine issue as to whether Defendant meets the

20

numerosity requirement. But to do that in this case she must show evidence raising a genuine issue as to whether the persons she needs to be "employees" are in fact "employees." And she does not meet this burden by pointing to or asserting just *anything* supposedly suggesting that someone is an "employee" under the applicable legal standards. *Cf. Equity Grp., Ltd. v. Painewebber Inc.*, 839 F. Supp. 930, 935 (D. D.C. 1993), aff'd, 48 F.3d 1285 (D.C. Cir. 1995) (rejecting, for purposes of a state law tort claim, "Plaintiff['s] assert[ion] that a dispute exists with respect to whether certain wholesalers were employees based on particular facts," because "these facts are insufficient to raise a genuine issue of material fact regarding whether the wholesalers were plaintiff's employees.").

Plaintiff has pointed only to facts that, though perhaps consistent with these persons being "employees," are also consistent with them being something other than employees. She has failed to offer facts, or legal argument, to suggest that these persons belong on the "employee" side of the line. At best, she offers at most mere speculation—analyzed under an unclear legal standard— which does not suffice to discharge her burden to defeat summary judgment on the Title VII and ADA claims.

Therefore, under *Bowers*, as stated above, in the absence of a conflict of material fact, the issue of whether someone is an "employee" for purposes of Title VII and the ADA is a preliminary matter that can be decided by the court as a matter of law. *Bowers*, 648 F. App'x at 573. The Court finds as a matter of law that Ann Alexander, Carolyn Tune, David Tune, and Julian Tune, were not "employees" during the periods in question And without them as employees, Plaintiff fails to raise a genuine issue as to whether Defendant meets the numerosity requirement, and thus, as a matter of law, Defendant cannot be liable under Title VII or the ADA.

## <u>CONCLUSION</u>

For all of the above reasons, Defendant's Motion for Summary Judgment (Doc. No. 14) will be granted, and judgment will be entered as to Plaintiff's Title VII and ADA claims. Plaintiff's Section 1981 claim will remain pending.

An appropriate order will be issued.

*Eli Richardson*

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE